**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| V.U.C., et al., | ) |
|  | ) |
|     Plaintiffs, | ) |
|  | ) |
| v. | )   Civil Action No. 1:21-cv-10652-RGS |
|  | )   (Leave to File Granted 6/17/21) |
| UNITED STATES CITIZENSHIP AND | ) |
| IMMIGRATION SERVICES, et al., | ) |
|  | ) |
|     Defendants. | ) |
|  | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

U nonimmigrant status ("U visa") is set aside for victims of qualifying crimes who have been helpful to law enforcement in investigating or prosecuting the crime. Due to an annual statutory cap on U visas, agency resource constraints, and growing demand, there is a backlog of approximately 160,000 principal petitions for U visas awaiting adjudication for placement on the waitlist. Once on the waitlist, the petitioner receives deferred action and becomes eligible for employment authorization. U visa petitions are generally adjudicated on a "first in, first out" basis, subject to certain limited exceptions, with current estimated wait times of 59.5 to 60 months for United States Citizenship and Immigration Services ("USCIS") to determine whether to place a petitioner on the waitlist.

The Court should dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. First, the Court lacks jurisdiction over the claims alleging unreasonable delay of U visa petitions and concomitant EAD applications, since the pace at which USCIS adjudicates such filings is discretionary and therefore unreviewable under a jurisdiction-stripping statute, 8 U.S.C. § 1252(a)(2)(B)(ii), as well as the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 701(a)(1)-(2). Second, the Court also lacks jurisdiction over the claims regarding the adjudication of requests for pre-waitlist employment authorization because the Secretary of Homeland Security ("Secretary") has discretion under 8 U.S.C. § 1184(p)(6) to decide whether to grant work authorization while a U visa petition is pending, and thus that decision is also unreviewable under Section 1252(a)(2)(B)(ii) and the APA. *See id*. To the extent Plaintiffs challenge USCIS's non-implementation of § 1184(p)(6), those claims are mooted by the new Bona Fide Determination ("BFD") policy announced on June 14, 2021.[1] Third, even if the Court has jurisdiction, Plaintiffs have not plausibly alleged that the processing times are unreasonable under the APA, particularly in light of the new policy designed to reduce them. Finally, Plaintiffs are not entitled to mandamus because Defendants lack a nondiscretionary duty to adjudicate their U visa petitions and EAD applications before those filed earlier in time by similarly situated petitioners.

In essence, Plaintiffs ask the Court to order USCIS to adjudicate their placement on the waitlist before petitioners with earlier-filed petitions. If the Court allows Plaintiffs to jump the line, it would "simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). The decision would set a dangerous precedent, "sending a clear signal that more litigious applicants"—and those with more resources—"are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer," which could include those who filed their U visa petitions *after* Plaintiffs and seek to leapfrog ahead of them. *See Dmitrenko v. Chertoff*, No. 07-CV-82, 2007 WL 1303009, at *1 (E.D. Va. Apr. 30, 2007). "[T]hat would create more unfairness than it would remedy given

---

[1] USCIS, "Policy Alert: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners" (June 14, 2021), available at: https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf (last visited June 15, 2021).

the likely number of equally worthy applicants." *Uranga v. USCIS*, 490 F. Supp. 3d 86, 105 (D.D.C. Sept. 28, 2020). Thus, Defendants ask that the Complaint be dismissed with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs allege[2] they are crime victims who filed petitions for U nonimmigrant status ("Form I-918") in August and October of 2017. Dkt. 1 ¶¶ 32, 44. Plaintiff V.U.C. filed an EAD application with her petition, *id.* ¶ 34, but Plaintiff P.C.C. did not file an EAD application until December 31, 2020, *id.* ¶ 46. Plaintiffs' petitions, filed 46 (P.C.C.) and 43 (V.U.C.) months ago, fall within the agency's posted estimated processing times. *See* USCIS, Check Case Processing Times, *available at* https://egov.uscis.gov/processing-times/ (last visited June 14, 2021) (noting current estimated time range of 59.5 to 60 months from time of filing to waitlist adjudication for Form I-918 at either Nebraska or Vermont Service Center).[3]

Plaintiffs assert six causes of action: three alleged violations of the APA and three claims for relief under the Mandamus Statute, 28 U.S.C. § 1361. Dkt. 1 ¶¶ 51-86.

## STATUTORY AND REGULATORY BACKGROUND

### I.   U Visa Petition Process.

Congress has conferred upon the Secretary of Homeland Security the authority to determine the admission conditions and processes for nonimmigrants. *See* 8 U.S.C. § 1184(a)(1). In 2000, Congress created the U visa as a part of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Pub. L. 106-386, 114 Stat. 1464, to provide nonimmigrant status to victims of

---

[2] Defendants restate Plaintiffs' factual allegations from the Complaint for purposes of this motion only, without any admission or concession as to their accuracy.

[3] The Court may properly take judicial notice of facts from government websites. *United States v. Charles*, 456 F. Supp. 3d 268, 283 n.11 (D. Mass. 2020) (citing *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010)).

certain qualifying criminal activity who cooperate with law enforcement in the investigation or prosecution of that criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U). In 2006, Congress transferred responsibility for U visas from the Attorney General to the Secretary of Homeland Security and directed the Secretary to promulgate regulations implementing section 1513 of the VTVPA. Pub. L. 109-162, 119 Stat. 2960, 3066 (2006); *see also L.D.G. v. Holder*, 744 F.3d 1022, 1025 (7th Cir. 2014) (describing statutory history of U visas). Pursuant to these regulations, USCIS has sole jurisdiction over all petitions for U visas and the authority to confer U nonimmigrant status to eligible individuals in the United States. 8 C.F.R. § 214.14(c)(1), (5).

An individual is eligible for a U visa if she can show that she has suffered substantial physical or mental abuse as a result of having been a victim of a qualifying crime that violated the laws of the United States or occurred in the United States or its territories or possessions; has credible or reliable information about the crime; has been helpful to law enforcement in investigating or prosecuting the crime; and is admissible to the United States or has obtained a discretionary waiver of applicable grounds of inadmissibility. *See* 8 U.S.C. §§ 1101(a)(15)(U), 1182(a), 1182(d)(14); *see also* 8 C.F.R. §§ 214.1(a)(3)(i); 214.14(b), (c)(2); 212.17. USCIS "will approve" a U visa petition that meets the statutory requirements in 8 U.S.C. § 1101(a)(15)(U). 8 C.F.R. § 214.14(c)(5)(i). If USCIS approves the petition, the petitioner will receive lawful U-1 nonimmigrant status and employment authorization for up to four years. *See* 8 U.S.C. § 1184(p)(6); 8 C.F.R. § 274a.12(a)(19). She may also be able to petition for certain qualifying relatives. *See* 8 U.S.C. § 1101(a)(15)(U)(ii); 8 C.F.R. § 214.14(f). After three years of continuous physical presence in the United States in U nonimmigrant status, she may apply to adjust status to lawful permanent resident. *See* 8 U.S.C. § 1255(m)(1).

By statute, the number of noncitizens who may be issued principal U visas or provided

principal U nonimmigrant status in the United States in any fiscal year shall not exceed 10,000. *See* 8 U.S.C. § 1184(p)(2)(A). Derivative petitions are not subject to the cap. *Id.* § 1184(p)(2)(B). In the rule promulgating the U regulations, USCIS estimated it would receive approximately 12,000 principal U visa petitions per year. *See* 72 Fed. Reg. 53014, 53033. USCIS has met the statutorily imposed cap each year since fiscal year 2010, and new filings have exceeded both the statutory cap and the agency's expectations each year since fiscal year 2011.[4] The number of U visa petitions filed with USCIS has increased markedly since 2009, when USCIS received 6,850 new principal U visa petitions. *See* I-918 Chart. USCIS has received over 20,000 new principal U visa petitions in each fiscal year since 2012. *See id.* By the end of the first quarter of Fiscal Year 2021, there were 160,611 principal U visa petitions pending. *See id.* But Congress has not raised the statutory cap.

Anticipating that the statutory 10,000-per-year cap would be met within the first few fiscal years of enactment, USCIS created a regulatory waitlist process. *See* 8 C.F.R. § 214.14(d)(2); *see also Patel v. Rodriguez*, No. 15-cv-486, 2015 WL 6083199, at *1 (N.D. Ill. Oct. 13, 2015) (explaining the waitlist process). USCIS generally processes U visa petitions for waitlist eligibility in the order they are received.[5] USCIS may, in its discretion, expedite the adjudication of U visa petitions, as with other petitions and applications adjudicated by the agency, in certain limited circumstances such as urgent humanitarian reasons.[6] In addition, USCIS may, in its discretion,

---

[4] *See* USCIS, Number of Form I-918, Petition for U Nonimmigrant Status by Fiscal Year, Quarter, and Case Status, Fiscal Years 2009-2021 ("I-918 Chart"), *available at* https://www.uscis.gov/sites/default/files/document/reports/I918u_visastatistics_fy2021_qtr1.pdf (last visited June 14, 2021).

[5] *See* USCIS Processing Times ("We generally process cases in the order we receive them."); *see also* 72 Fed. Reg. 53014, 53033 (describing the waiting list mechanism and indicating that "USCIS [will] adjudicate petitions on a first in, first out basis").

[6] *See* USCIS, How to Make an Expedite Request, *available at* https://www.uscis.gov/forms/filing-guidance/how-to-make-an-expedite-request;    https://www.uscis.gov/policy-manual/volume-1-

expedite the adjudication of U visa petitions at the request of U.S. Immigration and Customs Enforcement ("ICE"), in certain limited circumstances, including when the petitioner or a qualifying family member is in various stages of removal proceedings.[7] Further, because qualifying family members are not subject to the statutory cap found at 8 U.S.C. § 1184(p)(2), and because derivative petitions depend upon the principal petition, USCIS endeavors to adjudicate group filings together, even if derivative petitions are filed after the principal petition. *See* 8 C.F.R. § 214.14(f)(2). However, Plaintiffs do not allege any facts indicating that their petitions fall under any of these limited exceptions to the general "first in, first out" process. *See generally* Dkt. 1.

If a U visa petition is determined to be approvable, but for the fact that a U visa is not available due to the statutory cap, the petitioner is placed on the waitlist. *See* 8 C.F.R. § 214.14(d)(2). An approvable U visa petition is one that USCIS determines meets all the criteria to be granted a U visa. *Id.* § 214.14(c)(5)(i). When USCIS places a petitioner on the waitlist, the petitioner and qualifying family members, if in the United States, receive deferred action,[8] and "USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members." *Id.* § 214.14(d)(2).

USCIS has taken steps in recent years to address the U visa backlog and ensure waitlist eligibility determinations are made as quickly as feasible. Specifically, in August 2016, USCIS

---

part-a-chapter-5 (last visited June 15, 2021).

[7] *Id.*

[8] Deferred action is "an act of administrative convenience to the government which gives some cases lower priority" for removal. 8 C.F.R. § 274a.12(c)(14); *see also Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483-84 (1999) (describing deferred action). A person who has received deferred action based upon placement on the U visa waiting list does not accrue unlawful presence under 8 U.S.C. § 1182(a)(9)(B). *See* 8 C.F.R. § 214.14(d)(3). Deferred action does not confer lawful status, and USCIS may terminate deferred action at its discretion. *Id.*

expanded the number of facilities adjudicating U visa petitions to include its Nebraska Service Center. Historically, all U visa petitions were adjudicated only at the Vermont Service Center. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017).

## II.    PROCESS FOR OBTAINING EADS.

Non-citizens are permitted to accept employment in the United States only if they are lawfully admitted for permanent residence or otherwise authorized to be employed. *See* 8 U.S.C. § 1324a; 8 C.F.R. § 274a.12. At the time the Complaint was filed, USCIS conducted employment authorization adjudication for U visa petitioners and their qualifying family members at the time of waiting list placement and when granted U nonimmigrant status. 8 C.F.R. §§ 214.14(d)(2), 274a.12(c)(14); 8 U.S.C. § 1184(p)(3)(B).   Since June 14, 2021, employment authorization is available to U visa petitioners and their qualifying family members at three points: upon a favorable bona fide determination and assessment that a favorable exercise of discretion is warranted, upon placement on the waitlist, and upon the grant of U nonimmigrant status.[9]

On June 14, 2021, USCIS published a Policy Manual update implementing a process which will provide employment authorization and deferred action more efficiently to U visa petitioners and their qualifying family members with pending bona fide petitions who merit a favorable exercise of discretion. *See* USCIS Policy Manual, Volume 3, Part C, Chapter 5 *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited June 14, 2021). The new process is referred to as the Bona Fide Determination ("BFD") process and is authorized under 8 U.S.C. § 1184(p)(6), which, as discussed above, grants USCIS the discretion to issue work authorization to any non-citizen with a pending, bona fide U-visa petition. By implementing

---

[9] Once the BFD process has been fully implemented, USCIS will begin granting EADs to petitioners with pending bona fide U-visa petitions who merit a favorable exercise of discretion.

this new policy, USCIS seeks to address the U visa backlog by evaluating and adjudicating petitions as efficiently as possible. *Id*. The BFD process provides an opportunity for certain petitioners to receive BFD EADs and deferred action while their petitions are pending, consistent with the William Wilberforce Trafficking Victims Reauthorization Act of 2008 ("TVPRA 2008"), *See* Pub. L. 110-457 (PDF) (December 23, 2008), and the Secretary's authority over the administration and enforcement of the immigration laws. 8 U.S.C. § 1103(a)(1), (a)(3).

Petitioners whose petitions are pending, and those on the waitlist and their qualifying family members, are not automatically granted work authorization. In 2008, Congress amended 8 U.S.C. § 1184(p)(6), specifying that "[t]he Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." (emphasis added).  Acting within the discretion granted by the plain language of the statute, USCIS did not separately implement 8 U.S.C. § 1184(p)(6)'s amended language to provide work authorization to petitioners who were not yet on the waitlist until June 14, 2021. Under the new policy, USCIS conducts bona fide determinations and considers whether to exercise its discretion under 8 U.S.C. § 1184(p)(6) to grant employment authorization to pending, bona fide petitioners. At the waiting list phase, "USCIS, *in its discretion*, *may* authorize employment for such petitioners and qualifying family members" who are in the United States. 8 C.F.R. § 214.14(d)(2) (emphasis added). By contrast, once the U visa petition is granted, "the Attorney General *shall*, during the period those aliens are in lawful temporary resident status under that subsection, provide the aliens with employment authorization." 8 U.S.C. § 1184(p)(3)(B) (emphasis added).

## III.    SUMMARY OF U VISA PETITION PROCESS.

Based on the foregoing statutes and regulations, the U visa petition process consists of three distinct stages:

- First, "a U-Visa applicant whose application has not been processed by USCIS is not entitled to temporary resident status, deferred action, or work authorization." *Butanda v. Wolf*, No. 1:20-cv-01155, -- F. Supp. 3d. ---, 2021 WL 327714, at *2 (D. Colo. Feb. 2021).

- Second, USCIS conducts a review to determine whether a pending petition is bona fide, and whether a favorable exercise of discretion is warranted. If these determinations are favorable, USCIS may exercise discretion to grant deferred action and employment authorization to petitioners and family members in the U.S. for four years. If these determinations are unfavorable, USCIS initiates a waiting list adjudication to consider whether the petitioner or family member is eligible for U nonimmigrant status in all respects but for the statutory cap. If that determination is favorable, petitioners and family members in the U.S. are eligible for employment authorization and deferred action for 4 years.[10]

- "At stage three, a U-Visa applicant whose application has been approved is entitled to temporary resident status and employment authorization." *Id*.

Here, Plaintiffs are at stage 1 and ask the Court to order Defendants to bump them to stage 2. *See* Dkt. 1 at 15. In addition, Plaintiffs seek EADs before waitlist adjudication. *See id*.

## APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint when the court lacks subject-matter jurisdiction. A plaintiff has the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."

---

[10] *See* USCIS Policy Manual, Volume 3, Part C, Chapter 4, available at:
https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-4 (last visited June 15, 2021).

*Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Atieh v. Riordan*, 727 F.3d 73, 76 n.4 (1st Cir. 2013) (noting that *Iqbal* may require dismissal of an APA claim where "the underlying premise of the complaint is legally flawed (rather than factually unsupported)").

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS.

Plaintiffs allege that Defendants have unreasonably delayed or unlawfully withheld adjudication of their U visa petitions and applications for work authorization. They seek relief under the APA, which provides that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, "the only agency action that can be compelled under the APA is action legally required." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 63 (2004). Furthermore, the APA applies "except to the extent that . . . (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). And the Immigration and Nationality Act ("INA") provides: "Notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 1361] . . . no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[11] to be

---

[11] As explained by the Supreme Court, "this subchapter" refers to "Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration.'" *Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010).

in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum]." 8 U.S.C. § 1252(a)(2)(B)(ii); *M & K Engineering Inc. v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016).

> **A. INA Section 1252(a)(2)(B)(ii) and APA Section 701(a) Preclude Review of the APA Claims Relating to Delayed Waitlist Adjudication of U Visa Petitions and V.U.C.'s Accompanying EAD Application.**

Section 1184 of Title 8 provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and *under such conditions as the Attorney General[12] may by regulations prescribe . . . .*" (emphasis added). 8 U.S.C. § 1184(a)(1). Here, Section 1184(a)(1) grants broad discretion to the Secretary of Homeland Security[13] to determine the conditions for nonimmigrant admission, *see CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 619 (6th Cir. 2002); *Buddhi v. Holder*, 344 F. App'x 280, 284 (7th Cir. 2009); *M & K Engineering Inc.*, 814 F.3d at 485 ("By using the precatory term 'may,' rather than the directory term 'shall' Congress [in 8 U.S.C. § 1155] indicated its intent to make [the decision] discretionary."),[14] including admission as a U nonimmigrant. Nothing in the INA purports to constrain that discretion by prescribing a timeframe for placing U visa petitioners on the waitlist or requiring

---

[12]  The Homeland Security Act of 2002 provided that, following the transfer of certain governmental functions to the Department of Homeland Security, "reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department…" 6 U.S.C. § 557.  The statutory reference to the Attorney General in 8 U.S.C. § 1184(a)(1) therefore refers to the Secretary of Homeland Security.

[13]  "[T]he Homeland Security Act of 2002 . . . expressly transferred that responsibility to the Secretary of Homeland Security, 6 U.S.C. § 202, and 6 U.S.C. § 557 commands us to read § 1184(a)(1) as if it refers to the Secretary of Homeland Security." *Buddhi v. Holder*, 344 F. App'x 280, 284 n.1 (7th Cir. 2009).

[14]  *But see Royal Siam Corp. v. Chertoff*, 484 F.3d 139 (1st Cir. 2007) (questioning, but not deciding, whether the language of 8 U.S.C. § 1184(a)(1) was sufficiently discretionary to invoke 8 U.S.C. § 1252(a)(2)(B)(ii)).

certain petitioners to be given priority over others. "Granting the Attorney General and the Secretary the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication." *Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. 2014); *see also Orlov v. Howard*, 523 F. Supp. 2d 30, 35 (D.D.C. 2007)("In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, it is difficult to determine how the pace of processing an application could be anything other than discretionary.").

Likewise, Congress has granted the Secretary (and USCIS as his designee) broad discretion over the issuance of employment authorization to those with pending, bona fide U visa petitions. The INA provides that "[t]he Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6) (emphasis added). "The word 'may' is a clear grant of discretion to the USCIS." *Ramires*, 2020 WL 6146393, at *4; *M & K Engineering Inc*, 814 F.3d at 485. "This discretion suggests the same discretion in implementing the provision. . . . Congress has shown that it knows how to require an agency to implement a provision and adjudicate claims, especially within a certain timeframe. Yet Congress did not do so when it granted the Secretary the authority to provide work authorizations." *Gonzalez*, 985 F.3d at 367. By contrast, in 2006, Congress *required* the Secretary to promulgate regulations to implement the U visa program as part of the Violence Against Women Act. *See* Pub. L. No. 109-162, § 828,119 Stat. 2960, 3066 (2006).

Defendants acknowledge that this court has held that district courts have subject matter jurisdiction to consider whether a delay in adjudication of adjustment of status applications is unreasonable under the APA and respectfully requests that the court reconsider this decision in

the U visa context. *Vorontsova v. Chertoff*, No. 07-10426-RGS, 2007 WL 3238026, at * 2 (D. Mass. Nov. 2, 2007).

"The term 'action' must encompass the discretionary pace at which the . . . process proceeds because it encompasses the various other discretionary acts that constitute the process as a whole and that direct the pace of the process." *Beshir*, 10 F. Supp. 3d at 174. How USCIS exercises its discretion to manage the backlog of pending U visa petitions, including in what order to consider the petitions and how to best allocate its resources, is part of that process.[15] "As such, § 1252(a)(2)(B)(ii) precludes judicial review of any 'action,' meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds." *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006); *accord Touarsi v. Mueller*, 538 F. Supp. 2d 447, 452 (D. Mass. 2008). Hence, Section 1252(a)(2)(B)(ii) applies to the pace of U visa adjudication. *See Butanda*, 2021 WL 327714, at *5.

Because "Congress has entrusted the timeline for processing U-Visa applications to the discretion of the Attorney General," *id.* at *4, both INA Section 1252(a)(2)(B)(ii) and APA Section 701(a)[16] divest this Court of jurisdiction to consider the claim of delayed adjudication of Plaintiffs' U visa petitions and accompanying employment authorization applications. *See id.* ("The lack of a Congressionally mandated timeline and the concomitant grant of discretion to

---

[15] Although some courts have held that delayed adjudication constitutes "inaction" rather than "action," this distinction is elusive, "given that the difficulty in distinguishing between what constitutes "action" and "inaction" has been long acknowledged by courts and academic commentators alike." *Singh v. Napolitano*, 710 F. Supp. 2d 123, 131 (D.D.C. 2010). For example, one could say that Plaintiffs are challenging the agency's action in adjudicating other U visa petitions rather than theirs.

[16] APA Section 701(a)(1) bars review because a "statute[]"—*i.e.*, 8 U.S.C. § 1252(a)(2)(B)(ii)— "preclude[s] judicial review." APA Section 701(a)(2) bars review because "agency action is committed to agency discretion by law" pursuant to 8 U.S.C. §§ 1184(a)(1) and 1184(p)(6).

determine the 'time' and 'conditions' of admitting U-Visa applicants renders the pace of adjudication non-reviewable under Section 1252."); *Mendez v. United States Dep't of Homeland Sec.*, — F. Supp. 3d —, No. 1:20-CV-460, 2020 WL 7585828, at *3 (W.D. Mich. Dec. 16, 2020) ("[T]he Court finds that it lacks subject matter jurisdiction to resolve Plaintiffs' claims that their U-Visa applications have been unreasonably delayed."); *Canevaro v. Wolf*, No. 1:20-CV-3553-SCJ, 2021 WL 2283870 (N.D. Ga. May 20, 2021) ("Adjudication of U Visa applications is statutorily committed to the discretion of the Secretary [of Homeland Security], and by extension, USCIS"); *Lemus v. McAleenan*, No. CV 20-3344 (RBK/AMD), 2021 WL 2253522 (D.N.J. June 3, 2021) (concluding that 8 U.S.C. § 1184(a)(1) "clearly grants discretion over the promulgation of regulations for adjudicating U visas which necessarily includes discretion over the pace of adjudication.").

To be sure, some courts have held that they have jurisdiction to review claims of unreasonable delay in adjudicating U visa petitions for waitlist placement. *See, e.g.*, *Guzman Leizon v. Wilkinson*, No. 3:20-cv-30181-MGM (Minute Order) (D. Mass. May 24, 2021); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021) (finding unreasonable delay claim reviewable because the "agency has committed itself by regulation to place eligible applicants on the waiting list");[17] *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 597 (W.D. Tex. 2019) (holding that "the USCIS has a nondiscretionary duty to adjudicate U Visas within a reasonable time"). However, these courts have "conflate[d] the Secretary's obligation to adjudicate U-Visa

[17] The district court below did not address the jurisdictional issue, and it therefore was not briefed before the Fourth Circuit. *See Gonzalez*, 985 F.3d at 374; *see also Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D.N.C. 2019) (dismissing the unreasonable delay claim for failure to state a claim). Further, the Fourth Circuit did not analyze the discretion committed to the Secretary pursuant to 8 U.S.C. § 1184(a)(1) in the context of 8 U.S.C. § 1252(a)(2)(B)(ii).

14

applications with questions regarding the pace of such adjudication." *Mendez*, 2020 WL 7585828, at *3. "Stated differently, this analysis fails to recognize a distinction between (a) a claim that the Secretary has refused to adjudicate a U-Visa application and (b) a claim that the adjudication process is simply proceeding too slowly." *Id*. Here, the allegation is not that the normal processing time has come and gone, yet the agency is refusing to adjudicate Plaintiffs' petitions. The allegation is that the agency is exercising its discretion to adjudicate earlier-filed petitions first.

These cases also have not considered that "Congress knows how to, and often does, prescribe timelines for nonimmigrant admission when it wants to." *Butanda*, 2021 WL 327714, at *4. Tellingly, Section 1184 contains several provisions with built-in adjudication timelines, but the subsection governing U visas contains no timelines. *Compare* 8 U.S.C. § 1184(p) (U visas) *with, e.g., id*. § 1184(c)(2)(C) ("The Attorney General shall provide a process for reviewing and acting upon petitions under this subsection with respect to nonimmigrants described in section 1101(a)(15)(L) of this title within 30 days after the date a completed petition has been filed."). "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994) (internal quotation marks and alteration omitted).

Congress decided to cap the number of principal U visa petitions granted each year, and to let the agency decide how to manage any overflow.[18] The agency has exercised its discretion to adopt a "first in, first out" methodology for its regulatory BFD and waitlist determinations. Hence, Plaintiffs must wait their turn to be adjudicated for the BFD or waitlist and, if determined

---

[18] Congress can choose to raise the cap or enact other measures to resolve the backlog. In any event, the "lack of resources" to handle U visa petitions is "a problem for the political branches to work out." *Mashpee*, 336 F.3d at 1100 (internal quotation marks omitted).

eligible, to have their corresponding EAD applications adjudicated. Because Plaintiffs' claim of unreasonable delay stems from this exercise of discretion, Section 1252(a)(2)(B)(ii) precludes judicial review. Furthermore, the Court lacks jurisdiction under the Section 701(a) of the APA. The Court should therefore dismiss these claims for lack of subject matter jurisdiction.

**B. INA Section 1252(a)(2)(B)(ii) and APA Section 701(a) Also Preclude Review of Plaintiffs' APA Claims Regarding Adjudication of Requests for Employment Authorization Purportedly Made Pursuant to 8 U.S.C. § 1184(p)(6).**

As a foundational matter, to the extent Plaintiffs challenge the non-implementation of 8 U.S.C. § 1184(p)(6) generally, those claims are mooted by USCIS's implementation of this statutory provision on June 14, 2021. *See Horizon Bank & Trust Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004)(holding a case or issue becomes moot "when the court cannot give any effectual relief to the potentially prevailing party.")(internal citations omitted). To the extent Plaintiffs seek to challenge USCIS's non-implementation of 8 U.S.C. § 1184(p)(6) prior to June 14, 2021, or compel particular outcomes now that the policy has been implemented, INA Section 1252(a)(2)(B)(ii) and APA Section 701(a) also bar these claims. The silence regarding implementing the work authorization provision indicates that "the agency is not required to adjudicate pre-waiting-list work authorizations." *Gonzalez*, 985 F.3d at 369.

As explained *supra*, the decision whether to grant work authorization during the pendency of a U visa petition before waitlist adjudication is committed to agency discretion. Hence, the Court lacks jurisdiction under both 8 U.S.C. § 1252(a)(2)(B)(ii) and 5 U.S.C. § 701(a)[19] to review Plaintiffs' claims regarding allegedly delayed work authorizations. *See N-N v. Mayorkas*, -- F.

---

[19] APA Section 701(a)(1) bars review because a "statute[]"—*i.e.*, 8 U.S.C. § 1252(a)(2)(B)(ii)— "preclude[s] judicial review." APA Section 701(a)(2) bars review because "agency action is committed to agency discretion by law" pursuant to 8 U.S.C. § 1184(p)(6).

Supp. 3d ----, 2021 WL 1997033, at *11 (E.D.N.Y. May 18, 2021) ("the agency has no court-enforceable duty to determine the "bona fide" status of pending applications"); *Butanda*, 2021 WL 327714, at *5 (holding that "the court lacks jurisdiction over any attempt to compel work authorization under 5 U.S.C. § 702(a)(2) and 8 U.S.C. § 1252(a)(2)(B)(ii)"); *Ramires*, 2020 WL 6146393, at *5; *but see P. v. McAleenan*, No. 3:19-cv-40119-MGM (D. Mass. May 19, 2021) (Minute Order) (holding plaintiffs stated a colorable claim of unreasonable delay for pre-waitlist work authorization under 8 U.S.C. § 1184(p)(6)). Moreover, because the agency is not legally required to take any action, *SUWA* also compels dismissal of Count Two. *See Gonzalez*, 985 F.3d at 371 (holding that "under [*SUWA*] the agency is not required to implement or adjudicate pre-waiting-list work authorizations and so its failure to adjudicate Plaintiffs' requests in a timely manner is unreviewable").

### C. INA Section 1252(a)(2)(B)(ii) Also Precludes Review of the Mandamus Claims.

If the Court concludes that Section 1252(a)(2)(B)(ii) precludes review of the discretionary decisions regarding the pace of adjudicating Plaintiffs' U visa petitions and EAD applications, and its prior decision not to separately implement pre-waiting list work authorizations, then it should also conclude that mandamus relief under 28 U.S.C. § 1361 is unavailable. 8 U.S.C. § 1252(a)(2)(B)(ii); *Tourasi*, 538 F. Supp. 2d at 452. *Canevaro*, 2021 WL 2283870, at *5-6. Therefore, the Court should dismiss Counts Four through Six for lack of subject matter jurisdiction.

### II. EVEN IF THE COURT HAS JURISDICTION, PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE APA.

Even if the Court concludes that it has jurisdiction, Plaintiffs have failed to state a claim of unreasonable delay under the APA. The APA provides that an agency shall, "within a reasonable time . . . proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A reviewing court shall

"compel agency action unlawfully withheld or unreasonably delayed."[20] 5 U.S.C. § 706(1). To determine whether agency action is unreasonably delayed, the Court should consider the six factors set forth in *Telecommunications Research and Action Center v. FCC*, 750 F. 2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> 1) the time agencies take to make decisions must be governed by a rule of reason; 2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human welfare and health are at stake; 4) the effect of expediting delayed action on agency activities of a higher or competing authority; 5) the nature and extent of the interests prejudiced by delay; and 6) the court need not find any impropriety behind agency lassitude to hold that agency action is unreasonably delayed.

*Id.* (internal citations and quotations omitted).[21]

In considering these factors, courts have held that it is appropriate to "refuse[] to grant relief, even though all the other factors considered in *TRAC* favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee*, 336 F.3d at 1100 (citations and alterations omitted). In this regard, the court noted that there was "no evidence the agency had treated the petitioner differently than anyone else." *Id.* at 1100–01; *see also Morgovsky v. Dep't of Homeland Sec.,* 517 F. Supp. 2d 581, 585 (D. Mass. 2007); *see also Calderon-Ramirez*, 877 F.3d at 275-76.

---

[20] This relief is subject to an important limitation: the APA "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, *without directing how it shall act*.'" *SUWA*, 542 U.S. at 64 (emphasis added; internal quotation omitted).

[21] The First Circuit has not expressly adopted *TRAC*. But in multiple decisions, it has favorably cited to the decision. *See Anversa v. Partners Healthcare Sys., Inc*., 835 F.3d 167, 178 (1st Cir. 2016) (citing *TRAC* for the proposition that whether a timeframe for agency action is unreasonable depended on multiple factors); *Towns of Wellesley, Concord & Norwood, Mass. v. F.E.R.C*., 829 F.2d 275, 277 (1st Cir. 1987) (referring to the *TRAC* decision as setting forth "guidelines" relevant to determining unreasonable delay and applying *TRAC* to the case).

Plaintiffs have failed to show that there is an unreasonable delay in adjudicating their U visa petitions. Granting their request would effectively delay the U visa petitions filed earlier in time by similarly situated petitioners. V.U.C.'s APA unreasonable delay claim related to work authorization should be similarly dismissed[22] because Plaintiffs cannot show that USCIS has unlawfully withheld or unreasonably delayed adjudication, particularly as USCIS is not required to adjudicate their applications out of order. Under the *TRAC* factors, Plaintiffs have not stated sufficient facts for an APA unreasonable delay claim.

### A. Granting Plaintiffs' Requested Relief Would Delay the Adjudication of Earlier- Filed Petitions (*TRAC* Factors 1 and 4).

USCIS recognizes that, due to the increased volume of such petitions, there has been a growing backlog of U petitioners awaiting placement on the waiting list or a final adjudication. To address this issue, USCIS has exercised its discretion under 1184(p)(6) to implement the BFD process, which will allow for a more efficient and expeditious adjudicative process. Under the new BFD program, USCIS will continue adjudicating the petitions in the order they have been received, subject to certain limited exceptions (not alleged here). This process constitutes a "rule of reason" under the first *TRAC* factor. *See Mendez*, 2020 WL 7585828, at *4. Similarly, under the fourth *TRAC* factor, there would be no net gain from the judicial order Plaintiffs seek. *Id.* Ordering adjudication of Plaintiffs' U visa petitions and EAD requests, thereby pushing Plaintiffs' petitions to the front of the line, would only slow adjudication of other similarly situated U visa petitions and related EAD requests filed earlier in time. "Courts have concluded that, absent allegations that an applicant has been treated differently from other applicants, claims by U-Visa applicants to move ahead of other applicants should be rejected." *Id*. Plaintiffs have not alleged any facts to establish

---

[22] P.C.C. does not bring an unreasonable delay claim related to her EAD application.

why they should receive priority over those who filed before them. *See Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) ("Nor has Plaintiff provided any compelling rationale for why he should not be made to wait his turn for adjudication."); *See Canevaro,* 2021 WL 2283870, at *6-7 (finding that consideration of U visa applicants' waitlist eligibility is governed by a "rule of reason" and that granting Plaintiffs' requested relief would undermine this rule of reason.)

In other such cases, courts have refused to move a plaintiff "to the front of the line," as doing so would only contribute to, rather than mitigate, the backlog of pending applications or petitions. *See Kobaivanova v. Hansen*, No. 11-cv-943, 2011 WL 4401687, at *6 n.5 (N.D. Ohio Sept. 16, 2011) (refusing "to compel the USCIS to adjudicate Plaintiff's application immediately, with the result that Plaintiff's application would be resolved ahead of other applications that may have been pending for longer"); *Morgovsky,* 517 F. Supp. 2d at 585 ("The court simply has insufficient reason to advance Morgovsky to the head of the queue."); *Dmitrenko*, 2007 WL 1303009, at *1 (declining to compel adjudication of an immigration petition because it "would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer")

Even if other *TRAC* factors favored Plaintiffs, it remains appropriate to deny relief where a judicial order putting a petitioner at the head of the queue would simply move all other petitioners back one space and produce no net gain. *See Mashpee*, 336 F.3d at 1100. "Thus, this [fourth *TRAC*] factor strongly, if not dispositively, weighs against Plaintiffs' position." *Mendez*, 2020 WL 7585828, at *4; *Uranga*, 490 F. Supp. 3d at 105 ("Applying the fourth factor consistent with [D.C.] Circuit precedent, the Court finds that the four-year delay in processing one of a large number of applications does not warrant judicial intervention."); *N-N-*, 2021 WL 1997033, at *12 (finding over four-and-a-half-year delay in processing did not state a claim for unreasonable delay).

**B. There Is No Statutory or Regulatory Guidance on How Quickly USCIS Should Process U Visa Petitions (*TRAC* Factor 2).**

Under the second *TRAC* factor, Plaintiffs cannot state a claim for unreasonable delay. There is no timetable or other indication of the speed with which Congress expects USCIS to proceed with respect to U visa petitions or accompanying applications for work authorization. *See Mendez*, 2020 WL 7585828, at *4 ("Congress has failed to articulate a timeframe within which it expects U-Visa applications to be processed"); *see also Vorontsova*, 2007 WL 3238026, at *3 (holding plaintiff failed to state a claim for unreasonable delay in adjustment context, stating "Here, there is no requirement that CIS act immediately, or even promptly, on the adjudication of Vorontsova's application.").

In fact, there is contrary guidance. Under 8 U.S.C. § 1184(p)(2), Congress specifically provided that USCIS may issue only 10,000 principal U visas or status grants per year. Despite the high volume of U visa petitions filed over the past decade, Congress has never increased the statutory cap. This 10,000-visa cap provides insight into the scope of the U visa program Congress envisioned and stands in stark contrast to, for example, the 140,000-plus cap on employment-based immigrant visas available each fiscal year. *See* 8 U.S.C. § 1151(d)(1) (allowing 140,000 immigrant visas for employment-based entrants or adjustment applicants, plus any unused family-based immigrant visas). Acknowledging the challenges USCIS faces, courts have held that delays of several years in adjudicating immigration benefits are neither unexpected nor unreasonable. *See, e.g.*, *Saleh*, 367 F. Supp. 2d at 513 (almost 5 years); *Yan Chen v. Nielsen*, No. 17-CV-7157, 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) (4.5 years). Absent any statutory timetable, this second *TRAC* factor also weighs in Defendants' favor. *See Mendez*, 2020 WL 7585828, at *4.

### C. The Remaining *TRAC* Factors (3, 5, and 6) Do Not Compel a Finding of Unreasonable Delay.

The third and fifth *TRAC* factors consider "human health and welfare" and the "interests prejudiced by delay." *TRAC*, 750 F.2d at 80. To be sure, crime victims without employment authorization have significant interests at stake in the adjudication of their U visa petitions, which undoubtably impact their health and welfare. However, *all* U visa petitioners necessarily share Plaintiffs' interests, as U visa petitioners, by definition, are asserting that they are crime victims and seeking lawful immigrant status and employment authorization. The significance of Plaintiffs' interests in their U visa petitions and EADs is not sufficient reason to prioritize their petitions over those of other crime victims, some of whom may have even more pressing economic or health concerns.[23] *See Mendez*, 2020 WL 7585828, at *4 (noting that "very real cost in terms of human health and welfare" caused by U visa delays does not, standing alone, render a delay unreasonable); *N-N-*, 2021 WL 1997033, at *16 ("This appeal to the *possibility* of *discretionary* relief is an attenuated basis on which to complain about agency delay. Plaintiffs do not dispute that the agency is acting to complete the adjudicatory process long before the core relief sought through that process — the U visa — can actually be granted."). Finally, the sixth *TRAC* factor provides that agency impropriety is not required for a finding of unreasonable delay. Here, Plaintiffs do not allege any impropriety or bad faith by USCIS. Overall, the remaining *TRAC* factors are neutral.

On balance, the *TRAC* factors—especially the dispositive fourth factor—weigh in favor of Defendants. Plaintiffs do not assert that USCIS is treating them differently from other petitioners. To the contrary, they are asking for special treatment. If they succeed, other U visa petitioners

---

[23] Indeed, as stated above, USCIS provides an opportunity for petitioners with "urgent humanitarian reasons" to receive expedited consideration. Plaintiffs have not alleged that they have sought such treatment, nor that they warrant it.

will line up to file their own lawsuits to jump ahead in line. And those petitioners who have been waiting the longest will have to wait even longer as a result. *See Morgovsky*, 517 F. Supp. 2d at 585 ("While the court is sympathetic to Morgovsky's desire to visit his ailing family members in Ukraine without worry over the immigration consequences of a departure from the United States, there are others caught in the naturalization system whose claims are no less compelling.").

Even if the Court concludes that 46 and 43 months "is a substantial and unreasonable period of time to await a decision . . . a finding that delay is unreasonable does not, alone, justify judicial intervention." *Uranga*, 490 F. Supp. 3d at 105 (internal quotation marks omitted); *see also Anversa*, 835 F.3d at 178 ("The duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable"); *Mashpee*, 336 F.3d at 1102 ("[whether delay is unreasonable] . . . cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful").

Judicial intervention would necessarily involve an intrusion into the Defendants' allocation of adjudicatory resources, which courts are ill equipped to address. *see also Uranga*, 490 F. Supp. 3d at 106 (noting that "it is incumbent upon the legislature to insist that the agency receive[] the means" to adjudicate U visa petitions more expeditiously); *N-N-*, 2021 WL 1997033, at *14 (stating "[b]ut for this Court to demand an accelerated protocol, I would have to intrude into a quintessentially administrative function, and in the process reconfigure the agency's priorities to advance more than 100,000 U visa petitioners at the expense of applicants who seek other benefits from the agency, such as every other type of immigrant- and non-immigrant visa, asylum, and other remedies. This "is something that this Court is institutionally ill-equipped to do.") (internal quotations and citations omitted).  Such intervention is particularly unwarranted where, as here, USCIS has implemented a new program " to review petitions more efficiently, and provide the

benefits of employment authorization and deferred action to more petitioners in a shorter time period."[24]  *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978)("Absent constitutional constraints or extremely compelling circum-stances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties").

Because USCIS has not unreasonably delayed any action, the Court should dismiss Counts One and Three for failure to state a claim.

### III.  Plaintiffs' Mandamus Claims Should Be Dismissed Absent a Nondiscretionary Duty to Adjudicate Their Petitions Ahead of Earlier-Filed Petitions.

Even if the Court concludes that Section 1252(a)(2)(B)(ii) does not bar the mandamus claims, dismissal of Counts Fourth through Six is still appropriate under Rule 12(b)(6).[25] Mandamus relief is unavailable as a matter of law because the agency lacks a clear, nondiscretionary duty to adjudicate Plaintiffs' U visa petitions and EAD applications before those filed earlier.

The Mandamus Statute provides district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief under 28 U.S.C. § 1361 is an "extraordinary remedy" that "will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Indeed, when "exercising its equitable powers," the court "is bound to give serious weight to the obviously

---

[24] *See* USCIS Policy Manual, Volume 3, Part C, Appendices, available at: https://www.uscis.gov/policy-manual/volume-3-part-c (last visited June 15, 2021).

[25] To the extent the Court is inclined to grant relief under the APA, Counts Four through Six should be dismissed because the APA would provide the adequate remedy, thereby precluding granting a writ. *See In re City of Fall River, Mass.*, 470 F. 3d 30, 32 (1st Cir. 2006).

disruptive effect which the grant of . . . relief . . . [i]s likely to have on the administrative process." *Sampson v. Murray*, 415 U.S. 61, 83 (1974). "To be entitled to mandamus relief, an applicant must show that: (1) his claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Morgovsky*, 517 F. Supp. 2d at 584 (citing *Fall River*, 470 F. 3d at 32).

"Although no one disputes that Defendants have a nondiscretionary duty to adjudicate U visa petitions, Plaintiffs have failed to cite any authority that so plainly requires them to do so *within a particular timeframe* that there can be no doubt as to that duty." *A.C.C.S. v. Nielsen*, No. CV 18-10759-DMG (MRWx), 2019 WL 7841860, at *7 (C.D. Cal. Sept. 17, 2019) (internal quotation marks omitted; emphasis in original). Furthermore, "Defendants do not have a specific, unequivocal duty to adjudicate work authorization requests for persons who are waiting to be placed on the waiting list pursuant to § 1184(p)(6)." *Ramires*, 2020 WL 6146393, at *6. Accordingly, Plaintiffs have failed to allege facts stating a plausible claim for mandamus relief. *See Calderon-Ramirez*, 877 F.3d at 275-76; *Gonzalez*, 985 F.3d at 374 n.9 (noting that "the agency has unreviewable discretion in [its] decision not to adjudicate" pre- waitlist work authorization applications and "thus cannot have a 'clear duty to act'" as required for mandamus relief (alteration omitted)).

Absent a nondiscretionary duty to put Plaintiffs at the front of the line, there is no basis for the Court to issue a writ of mandamus to compel Defendants to adjudicate Plaintiffs' U visa petitions and EAD applications.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:     */s/ Erin E. Brizius*
        Erin E. Brizius
        Assistant U.S. Attorney
        United States Attorney's Office
        1 Courthouse Way, Suite 9200
        Boston, MA  02210
        (617) 748-3398
Dated: June 21, 2021        Erin.E.Brizius2@usdoj.gov