UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10652-RGS

V.U.C. and P.C.C.

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES et al.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

August 18, 2021

STEARNS, D.J.

By way of their Complaint, plaintiffs V.U.C. and P.C.C. seek to compel the United States Citizenship and Immigration Services (USCIS) to adjudicate their eligibility for the U nonimmigrant status (U-visa) waitlist and Employment Authorization Documents (EAD). In addition to USCIS, individual defendants include, solely in their official capacities, Alejandro Mayorkas, the Secretary of Homeland Security; Tracy Renaud, Acting Deputy Director of USCIS; Connie Nolan, Acting Associate Director of Service Center Operations Directorate; Michael Paul, Director of the Vermont Service Center; and William Connor, Director of the Nebraska Service Center. Defendants move to dismiss for lack of subject matter

jurisdiction and for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## BACKGROUND

The U-visa program grants temporary lawful residency and work authorization to immigrants who are victims of certain designated crimes and who aid law enforcement in the investigation or prosecution of those crimes. *See* 8 U.S.C. § 1101(a)(15)(U). The number of U-visas available in a given year is capped at 10,000. *Id.* § 1184(p)(2)(A). Eligible petitioners who do not receive a U-visa solely because of the annual cap are placed on a waitlist. 8 C.F.R. § 214.14(d)(2). Once placed on the waitlist, USCIS "will grant deferred action or parole" to a petitioner and qualifying family members, and "in its discretion, may authorize employment." *Id.* In addition, "[t]he Secretary may grant work authorization to any alien who has a pending, bona fide application" for a U-visa. 8 U.S.C § 1184(p)(6).

Plaintiffs V.U.C. and P.C.C., originally of El Salvador, allege that they qualify for U-visas because they were victims of domestic violence, and that each have fully cooperated with law enforcement in the investigation and prosecution of the crimes. V.U.C. filed a U-visa petition and an EAD application on October 24, 2017. P.C.C. filed a U-visa petition and an EAD application on August 9, 2017, and December 31, 2020 respectively. Neither

has received a U-visa waitlist or an EAD determination, nor has there been a "bona fide" determination of their U-visa petitions.[1]

Plaintiffs maintain that defendants' delay and refusal to adjudicate their U-visa and EAD applications has heightened their fear of deportation and separation from family and has prevented them from being able to financially support their families. Plaintiffs assert claims under the Administrative Procedure Act (APA) (Counts I-III) and the Mandamus Act (Counts IV-VI): unreasonable delay in determining their U-visa waitlist eligibility (Counts I and IV); withholding adjudication of their EAD applications (Counts II and IV); and unreasonable delay in adjudicating V.U.C.'s EAD application (Counts III and VI).

DISCUSSION

*Subject Matter Jurisdiction*

Under 8 U.S.C. § 1252(a)(2)(B)(ii), courts lack jurisdiction to review "any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

---

[1] On June 14, 2021, USCIS announced the implementation of a new bona Fide Determination Process pursuant to 8 U.S.C § 1184(p)(6). *See* USCIS Policy Alert (June 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf (last visited Aug. 11, 2021).

3

Security, other than the granting of [asylum]." Defendants contend that because the Secretary of Homeland Security has broad discretion to determine the conditions of nonimmigrant admission, *see* 8 U.S.C. § 1184(a)(1) and 6 U.S.C. §§ 202, 557, a court cannot review the U-visa decision process, including the pace of the adjudication, *see, e.g.*, *Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. 2014) ("Granting the Attorney General and the Secretary the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication."). Likewise, whether to issue pre-waitlist EADs also falls squarely within the Secretary's discretion. *See* 8 U.S.C. § 1184(p)(6) ("The Secretary *may* grant work authorization . . . .") (emphasis added).

Further, defendants note that, while the APA empowers the court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), "the only agency action that can be compelled under the APA is action legally *required*," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004); *see also* 5 U.S.C. § 701(a) (excluding "agency action [] committed to agency discretion by law" from the scope of APA review). APA review is additionally limited to "a *discrete* agency action," and precludes any "broad programmatic attack." *Norton*, 542 U.S. at 64. Here, defendants contend that because Congress has not mandated a timetable to render a U-visa

4

waitlist decision, nor required the consideration of EAD applications during the pendency of a U-visa petition, the court has no jurisdiction to consider claims under the APA or the Mandamus Act. *See Norton*, 542 U.S. at 63. ("The mandamus remedy was normally limited to enforcement of 'a specific, unequivocal command,' the ordering of a 'precise, definite act . . . about which [an official] had no discretion whatever.'") (citations omitted).

The court accepts plaintiffs' argument that it has subject matter jurisdiction to review a claim of unreasonable delay claim with respect to the U-visa waitlist adjudication. As defendants acknowledge, "Congress *required* the Secretary to promulgate regulations to implement the U visa program as part of the Violence Against Women Act" of 2006. Mot. at 12. Moreover, the promulgated regulations require USCIS to render a decision on a U-visa petition. "After completing its de novo review of the petition and evidence, USCIS *will* issue a written decision approving or denying Form I-918 and notify the petitioner of this decision." 8 C.F.R. § 214.14(c)(5) (emphasis added). "All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." *Id*. § 214(d)(2) (emphasis added). Accordingly, USCIS has no discretion over *whether* to adjudicate a U-visa

5

petition for waitlist eligibility. A claim that USCIS unreasonably delayed a U-visa waitlist determination is thus reviewable under the APA.

There is no similar mandate, however, directing the Secretary to implement the permissive work authorization provision of 8 U.S.C. § 1184(p)(6).

> [N]o part of the 2008 Trafficking Victims Protection Reauthorization Act – which added the permissive work-authorization provision in § 1184(p)(6) – requires the Secretary to implement that provision or adjudicate each work-authorization petition. Pub. L. No. 110-457, 122 Stat. 5044. Congress explicitly required the Secretary to implement the U-Visa program but remained silent about implementing work-authorization adjudications.

*Gonzalez v. Cuccinelli*, 985 F.3d 357, 367-368 (4th Cir. 2021) (concluding that the lack of an implementation timeline or directive "means that the consideration of every work-authorization request is not 'required'").[2]

The "skeletal 'bona fide' standard" of § 1184(p)(6) also weighs against concluding that Congress required USCIS to take a discrete action.[3] *N-N v. Mayorkas*, 2021 WL 1997033, at *11 (E.D.N.Y. May 18, 2021); *cf. I.N.S. v. St.*

---

[2] The U-visa program itself, although created in 2000 as a part of the Victims of Trafficking Act, was not required to be implemented until six years later with the passage of the Violence Against Women Act of 2006. *Id.* at 367.

[3] In contrast, the statutory framework for the U-visa program sets out the eligibility criteria. *See* 8 U.S.C. § 1101(a)(15)(U).

*Cyr*, 533 U.S. 289, 307-308 (2001) ("Eligibility that was '*governed by specific statutory standards*' provided 'a right to a ruling on an applicant's eligibility,' even though the actual granting of relief was 'not a matter of right under any circumstances, but rather is in all cases a matter of grace.'") (emphasis added, citation omitted). "[T]he question is not whether USCIS *could* [define the 'bona fide' standard], but whether *Congress has* done so in Section 1184 itself. Congress has not done so here, and accordingly [the court] conclude[s] that it left the agency discretion to implement its discretionary authority under Section 1184(p)(6) – or not." *N-N*, 2021 WL 1997033, at *11;[4] *see also Gonzalez*, 985 F.3d at 370 ("[S]everal circuits . . . have rejected that such broad 'standards' render decisions reviewable.") (citing Third, Fourth, and D.C. Circuits). Absent "specific statutory standards" that compel the consideration of pre-wait EAD applications,

---

[4] Indeed, when USCIS implemented its Bona Fide Determination Process, it supplied its own interpretation of "bona fide petition" in the absence of a statutory definition. *See* Policy Alert at 1 n.2.

there is no basis on which to sustain claims for unlawful withholding or unreasonable delay of action.[5]

*Failure to State a Claim*

In evaluating an unreasonably delayed agency action claim, courts often consider the six factors set out in *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*):

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

---

[5] Plaintiffs contend that permitting USCIS to decide in its own discretion to implement (or not) § 1184(p)(6) would render the statute superfluous.

> The answer is simple. Without a grant of authority from Congress, the agency has no power. In enacting the provision, Congress authorized, but did not require, the agency to grant work authorizations. Just as Congress does not have to exercise the powers delegated to it by the people, neither does the agency have to exercise its delegated powers where the text and structure of the relevant statute provide it with complete discretion.

*Gonzalez*, 985 F.3d at 371.

*Id.* at 80 (internal citations omitted); *see also Towns of Wellesley, Concord & Norwood, Mass. v. F.E.R.C.*, 829 F.2d 275, 277 (1st Cir. 1987) (applying *TRAC*).

Defendants contend that plaintiffs have not stated a claim for unreasonable delay under *TRAC*. USCIS's practice (as stated in its public documents) of considering U-visa petitions in the order they are received (with limited exceptions not raised here) is a "rule of reason" (*TRAC* factor one). *See Mendez v. U.S. Dep't of Homeland Sec.*, 507 F. Supp. 3d 882, 888 (W.D. Mich. 2020). Because Congress has not specified a timetable for action (*TRAC* factor two), expediting plaintiffs' petitions would displace other petitioners in the queue who have waited longer for the same relief (*TRAC* factor four). *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("We have noted before the importance of 'competing priorities' in assessing the reasonableness of an administrative delay. . . . [W]e refused to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'"). Plaintiffs have not alleged agency impropriety (*TRAC* factor six). And finally, while plaintiffs' welfare

9

interests are weighty (*TRAC* factors three and five), they are no more so than those of all U-visa petitioners awaiting waitlist adjudication.

Plaintiffs respond that their allegations, which must be accepted as true at this stage of the litigation, limn the elements of an unreasonable delay claim: The length of the delay – nearly four years – is substantial, and the harm to plaintiffs' personal health and welfare is serious. Further, plaintiffs contend that the *TRAC* factors require "a fact intensive inquiry," *Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017), that precludes a brevis termination of their claims without the benefit of discovery. The court likewise, as plaintiffs see it, cannot credit defendants' explanation – that there are "an overwhelming backlog of U[-]visa petitions and too few agency resources," Reply at 5, without any investigation of its truth.

The court is sympathetic to the uncertainty and frustration generated by the lengthy delay in plaintiffs' U-visa waitlist adjudication. Nevertheless, the court concludes that plaintiffs have not made out a claim for *unreasonable* delay. "The duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016). The court is without the power to order USCIS to accelerate the pace of adjudication generally, or to dictate the overall order of

adjudications. *See N-N*, 2021 WL 1997033, at *14 ("[F]or this Court to demand an accelerated protocol, [it] would have to intrude into a quintessentially administrative function, and in the process reconfigure the agency's priorities to advance more than 100,000 U[-]visa petitioners at the expense of applicants who seek other benefits from the agency, such as every other type of immigrant- and non-immigrant visa, asylum, and other remedies."). Plaintiffs make no allegations that the processing times of their petitions have been longer than for other similarly situated U-visa petitioners,[6] or that they are entitled to special expedited consideration. *See Mashpee*, 336 F.3 at 1100 ("There was no evidence the agency had treated the petitioner differently from anyone else."). Accordingly, the court cannot draw the inference that the delay in processing plaintiffs' U-visa petitions is unreasonable in any sense that a court has the power to remedy.

---

[6] Prior to the Bona Fide Determination Process, the U-visa processing time range from initial filing to a waitlist determination was 60.5-61 months at both the Nebraska Processing Center and the Vermont Processing Center. *See https://egov.uscis.gov/processing-times/* (selecting form I-918 and the relevant processing center, last visited August 11, 2021). The Policy Alert states that the Bona Fide Determination Process was created in response to "drastic increases in the volume of U nonimmigrant petitions and a growing backlog awaiting placement on the waiting list or final adjudication." Policy Alert at 2.

ORDER

For the foregoing reasons, defendants' motion to dismiss is <u>ALLOWED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE